## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CYNTHIA LANE, et al.,                    )
individually and on behalf of            )
all others similarly situated,           )
                                         )
  Plaintiffs,                  )  Case No. 2:22-cv-02392
                                         )
v.                                       )
                                         )
LABETTE HEALTH,                          )
                                         )
  Defendant.                    )

## DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

## TABLE OF CONTENTS

I. **Factual Background** ................................................................................... **2**

II. **Questions Presented** ................................................................................. **3**

III. **Argument** ................................................................................................ **4**

 A. **Legal Standards** ............................................................................. 4

  1. **Rule 12(b)(1)** ......................................................................... 4

  2. **Rule 12(b)(6)** ......................................................................... 5

 B. **Plaintiffs' Claims Should Be Dismissed for Lack of Standing** ............................. 6

  1. **Plaintiffs Do Not Have Standing Because They Have Not Alleged a Plausible Injury-in-Fact** ................................................................ 6

   a. *Allegations of potential out-of-pocket costs and time spent performing credit monitoring are not sufficient to confer standing.* ............................. 7

   b. *Plaintiff did not suffer "benefit of the bargain" damages, and such damages would be insufficient to confer standing.* ............................. 8

   c. *Spam calls are not sufficient to confer standing because they are too speculative.* ............................. 9

  2. **Labette Health's Pre-Suit Provision of Insurance Coverage Moots Plaintiffs' Alleged Injuries** ............................. 11

 C. **Each Count of the Complaint Should Be Dismissed for Failure to State a Claim** ............................. 14

  1. **Each Count in the Complaint Fails to State a Claim Because Plaintiff Failed to Meet the Threshold Requirement Under the Kansas Tort Claims Act** ............................. 14

2.   **Count II Should Be Dismissed Because Plaintiffs Do Not Allege Facts to Demonstrate an Implied Contract Between the Parties** ...............................16

3.   **Count III Should Be Dismissed Because Plaintiffs Have Not Alleged Facts to Demonstrate that Labette Health Was Unjustly Enriched** ......................19

4.   **Count IV Fails to State a Claim Because Plaintiffs Have Not Sufficiently Alleged Invasion of Privacy** ..................................................................20

5.   **Count V Should Be Dismissed Because They Have Not Alleged Sufficient Facts to Establish that Labette Health Owed Them a Fiduciary Duty** ........23

6.   **Plaintiffs Have Not Met the Threshold Requirements for a Claim of Outrage, and Count VI Should Be Dismissed** ...............................................24

IV.   **Conclusion** ....................................................................................................... 28

OP 3344679.6

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Agred Found. v. U.S. Army Corps of Engineers*,
    3 F.4th 1069 (8th Cir. 2021) ................................................... 10

*Amirhamzeh v. Chase Bank USA, N.A.*,
    2014 WL 641705 (C.D. Cal. Feb. 7, 2014) ............................... 12

*Apperson v. Sec. State Bank*,
    215 Kan. 724, 528 P.2d 1211 (1974) ...................................... 17

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ......................................................... 5, 6, 27

*Ayalla v. Unified Gov't of Wyandotte Cnty.*,
    349 P.3d 491 (Kan. Ct. App. 2015) ......................................... 15

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ......................................................... 5, 6, 27

*Benson v. Bryan*,
    2014 WL 6609375 (D. Kan. Nov. 20, 2014) ............................ 25

*Bixler v. Foster*,
    596 F.3d 751 (10th Cir. 2010) ........................................ 20, 27, 28

*Brown v. Montoya*,
    662 F.3d 1152 (10th Cir. 2011) ................................................ 5

*Brush v. Miami Beach Healthcare Grp. Ltd.*,
    238 F. Supp. 3d 1359 (S.D. Fla. 2017) .......................... 16, 17, 19

*Burgess v. Eforce Media, Inc.*,
    2007 WL 3355369 (W.D.N.C. Nov. 9, 2007) ........................... 11

*C.C. v. Med-Data Inc.*,
    2022 WL 970862 (D. Kan. Mar. 31, 2022) ......................... *passim*

*Cherny v. Emigrant Bank*,
    604 F. Supp. 2d 605 (S.D.N.Y. 2009) ...................................... 11

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ....................................................... 4, 5, 10

OP 3344679.6

*Cooper v. Bonobos, Inc.*,
    2022 WL 170622 (S.D.N.Y. Jan. 19, 2022) ...........................................................11

*Dana v. Heartland Management Co., Inc.*,
    48 Kan. App. 2d 1048, 301 P.3d 772 (2013) .............................................23, 25, 26

*Dodge City Implement, Inc. v. Bd. of Cnty. Comm'rs of Cnty. of Barber*,
    288 Kan. 619, 205 P.3d 1265 (2009) ...................................................................14

*Dress v. Cap. One Bank (USA), N.A.*,
    2019 WL 3451304 (E.D. Va. July 30, 2019) ........................................................12

*Dunegan v. City of Council Grove, Kansas Water Dep't*,
    77 F. Supp. 2d 1192 (D. Kan. 1999) ....................................................................14

*E.E.O.C. v. C.R. England, Inc.*,
    644 F.3d 1028 (10th Cir. 2011) ...........................................................................22

*Epstein v. JPMorgan Chase & Co.*,
    2014 WL 1133567 (S.D.N.Y. Mar. 21, 2014) ......................................................12

*Fernandez v. Leidos, Inc.*,
    127 F. Supp. 3d 1078 (E.D. Cal. 2015) ................................................................11

*Galaria v. Nationwide Mut. Ins. Co.*,
    998 F. Supp. 2d 646 (S.D. Ohio 2014) ................................................................22

*Garcia v. Anderson*,
    46 Kan. App. 2d 1094, 268 P.3d 1248 (2012) .....................................................15

*Griffin v. Wal-Mart Stores, Inc.*,
    2005 WL 4704776 (D. Kan. Dec. 7, 2005) ..........................................................13

*Groundhog v. Keeler*,
    442 F.2d 674 (10th Cir. 1971) .............................................................................4

*Hall v. Bellmon*,
    935 F.2d 1106 (10th Cir. 1991) ...........................................................................6

*Hallam v. Mercy Health Ctr. of Manhattan, Inc.*,
    278 Kan. 339, 97 P.3d 492 (2004) ......................................................................25

*Hamilton v. Gen. Mills, Inc.*,
    2016 WL 4060310 (D. Or. July 27, 2016) ...........................................................13

*Hapka v. Carecentrix, Inc.*,
    2016 WL 7336407 (D. Kan. Dec. 19, 2016) .........................................................7

OP 3344679.6

*Hardy v. Bed Bath & Beyond, Inc.*,
  2018 WL 1272687 (S.D. Fla. Mar. 9, 2018) ..................................................13

*Harris v. PFI W. Stores, Inc.*,
  2020 WL 3965022 (C.D. Cal. Apr. 9, 2020) ..................................................13

*Hayes v. Wal-Mart Stores, Inc.*,
  725 F.3d 349 (3d Cir. 2013) .........................................................................12

*Haz-Mat Response, Inc. v. Certified Waste Servs. Ltd.*,
  259 Kan. 166, 910 P.2d 839 (1996) .............................................................19

*Hill v. LLR, Inc.*,
  2020 WL 9770748 (D. Mont. Nov. 16, 2020) ..............................................12

*Hurtig v. Mattox*,
  2017 WL 6542803 (Kan. Ct. App., Dec. 22, 2017) ......................................19

*Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*,
  892 F.3d 613 (4th Cir. 2018) .......................................................................10

*J.W. Thompson Co. v. Welles Prod. Corp.*,
  243 Kan. 503, 758 P.2d 738 (1988) .............................................................19

*Jeanes v. Bank of Am., N.A.*,
  40 Kan. App. 2d 281, 191 P.3d 325 (2008) .................................................15

*Legg v. Leaders Life Ins. Co.*,
  574 F. Supp. 3d 985 (W.D. Okla. 2021) ........................................................9

*Lindsey Masonry Co. v. Murray & Sons Constr. Co.*,
  53 Kan. App. 2d 505, 390 P.3d 56 (2017) ...................................................16

*Luman v. Theismann*,
  647 F. App'x 804 (9th Cir. 2016) .................................................................12

*Lupia v. Medicredit, Inc.*,
  8 F.4th 1184 (10th Cir. 2021) .........................................................................4

*McKenzie v. Allconnect, Inc.*,
  369 F. Supp. 3d 810 (E.D. Ky. 2019) ...........................................................22

*Meckenstock v. N. Am. Co. for Life & Health Ins.*,
  2009 WL 10689706 (D. Kan. Dec. 21, 2009) ...............................................20

*Melnick v. TAMKO Bldg. Prod., Inc.*,
  469 F. Supp. 3d 1082 (D. Kan. 2020) ..........................................................19

v

*Midwest Asphalt Coating, Inc. v. Chelsea Plaza Homes, Inc.*,
  45 Kan. App. 2d 119, 243 P.3d 1106 (2010) .........................................................................18

*Miller v. Sloan, Listrom, Eisenbarth, Sloan & Glassman*,
  267 Kan. 245, 978 P.2d 922 (1999) ...................................................................................25

*Ramos v. Bd. of Cnty. Commissioners of Cnty. of Saline*,
  2000 WL 1478542 (D. Kan. Sept. 27, 2000) ......................................................................21

*Reindl v. City of Leavenworth*,
  361 F. Supp. 2d 1294 (D. Kan. 2005).................................................................................15

*S. Utah Wilderness All. V. Palma*,
  707 F.3d 1143 (10th Cir. 2013) ............................................................................................4

*Santa Fe All. For Pub. Health & Safety v. City of Santa Fe, New Mexico*,
  993 F.3d 802 (10th Cir. 2021) ..............................................................................................5

*Schneider v. Kansas Securities Commissioner*,
  397 P.3d 1227 (Kan. Ct. App. 2017) ..................................................................................23

*Schwab v. Kansas*,
  2017 WL 2831508 (D. Kan. June 30, 2017).........................................................................5

*In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*,
  45 F. Supp. 3d 14 (D.D.C. 2014) .......................................................................................10

*Simplicity International v. Genlabs Corporation*,
  2010 WL 11508819 (C.D. Cal., Apr. 16, 2010) .................................................................23

*Smith v. United States*,
  561 F.3d 1090 (10th Cir. 2009) ............................................................................................5

*Smith v. Welch*,
  265 Kan. 868 (1998) ..........................................................................................................21

*Tandy v. City of Wichita*,
  380 F.3d 1277 (10th Cir. 2004) ............................................................................................4

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021).......................................................................................................6, 8

*U.S. v. Students Challenging Regul. Agency Procs. (SCRAP)*,
  412 U.S. 669 (1973)..............................................................................................................5

*University of Colorado Hosp. v. Denver Pub. Co.*,
  340 F.Supp.2d 1142 (D. Colo. 2004)..................................................................................24

OP 3344679.6

*Valadez v. Emmis Commc'ns*,
  290 Kan. 472, 229 P.3d 389 (2010) ...................................................................................26, 27

*Weatherby v. Burlington N. & Santa Fe Ry. Co.*,
  209 F. Supp. 2d 1155 (D. Kan. 2002) ........................................................................................16

*Weinberg v. Advanced Data Processing, Inc.*,
  147 F.Supp.3d 1359 (S.D. Fla., Nov. 17, 2015) ......................................................................23

*Wheat v. Finney*,
  230 Kan. 217, 630 P.2d 1160 (1981) ........................................................................................15

*Wilkerson v. Shinseki*,
  606 F.3d 1256 (10th Cir. 2010) ................................................................................................24

**Statutes**

K.S.A. 12–105b(d) ...............................................................................................................................14

K.S.A. § 75-6103 ................................................................................................................................15

OP 3344679.6

The Complaint of Plaintiffs Cynthia Lane and D.H. should be dismissed in its entirety because Plaintiffs lack standing. The principal injury alleged by Plaintiffs is a speculative "increased risk" of future harm stemming from the alleged data breach, including yet-to-occur identity theft. This District as well as the Supreme Court of the United States recently and conclusively held that speculative risks of future harm are not sufficient to constitute injury-in-fact, and are thereby insufficient to convey standing to Plaintiffs. Plaintiffs attempt to allege a host of smaller, equally speculative injuries stemming from the alleged data breach including spam calls and benefit of the bargain damages. But these fail to convey standing for similar reasons to the rest of Plaintiffs' Complaint. Additionally, as shown in the notification letters attached to the Complaint, well before Plaintiffs filed suit, Labette Health provided Plaintiffs (and the entire proposed class) with identity theft protection services, including $1 million of no-cost, zero-deductible identity theft insurance that would cover all costs of responding to any identity theft incidents suffered by Plaintiffs (or the class). This renders the allegations in the Complaint moot at the time of filing, depriving Plaintiffs of standing.

Even if any Plaintiffs establish standing for any of their claims at this stage, this Court should still dismiss Plaintiffs' Complaint in its entirety for failure to state a claim. First, Plaintiff never complied with the notice provisions of the Kansas Tort Claims Act. Second, Plaintiffs do not sufficiently allege the existence of an implied contract. Third, Plaintiffs fail to provide any basis for their argument that Labette Health has been unjustly enriched. Fourth, Plaintiffs fail to plead the basic requirements for a claim of invasion of privacy under Kansas law. Fifth, Plaintiffs have not alleged sufficient factual matter to demonstrate that Labette Health owed them a fiduciary duty of confidentiality. Sixth and finally, Plaintiffs' alleged injuries do not satisfy the requirements to state an outrage claim.

OP 3344679.6

I.      **FACTUAL BACKGROUND**

1.      Plaintiffs are residents of the State of Kansas. Complaint (Doc. 1-1) ¶¶ 21-22.

2.      Labette Health is a county hospital in Labette County, Kansas. *Id.* ¶ 23.

3.      In October of 2021, Labette Health suffered a data breach as a result of the actions of cyber thieves. *Id.* at ¶ 37.

4.      As a part of this data breach, some files, including information regarding patients, were accessed. *Id.* at ¶ 38.

5.      Plaintiffs allege that the data involved in the breach includes name, address, phone number and email address, date of birth, demographic information, social security numbers, information related to individual medical history, insurance information and coverage, information concerning an individual's doctor, nurse, or other medical providers, photo identification, and employer information. *Id*. at ¶ 29.

6.      Plaintiffs do not allege that their financial account numbers and their username and password or personal identification number necessary to access such account were data included in the incident at issue. *See* (Doc. 1-1) generally.

7.      Shortly after this data breach, Labette Health performed an investigation and, on February 11, 2022, informed a number of its patients that their data may have been accessed. *Id.* at ¶ 38. Labette Health offered the entire potentially affected population, free of any consideration, one year of IDX Privacy protection services, which includes credit and identity monitoring, identity theft restoration services, and $1,000,000 of no-deductible insurance coverage for all costs associated with any identity theft incidents. *See* Doc. 1-1 at ¶¶ 120, 176 (referencing identity monitoring services by Labette Health, and notice from Labette Health discussing the same); A true and accurate copy of this notice is attached as **Exhibit A**.

8.     Plaintiffs were among those that received notices that their data may have been accessed. *Id.* at ¶ 38.

9.     Plaintiffs allege that this has resulted an increased risk of identity theft, spam calls, and emotional distress. *Id.* at ¶¶ 128, 129.

## II.     <u>QUESTIONS PRESENTED</u>

1.     Whether Plaintiffs have successfully established standing where their purported injury-in-fact is premised on the speculative increased risk of future harm.

2.     Whether Plaintiffs' claims were moot, and Plaintiffs, therefore, lacked standing at the time they filed suit, because Plaintiffs were provided identity theft protection and insurance that redresses the potential future harms alleged in the Complaint.

3.     Whether Plaintiffs fail to state a claim because they did not provide notice under the Kansas Tort Claims Act.

4.     Whether Count II properly states a claim for implied contract against Labette Health.

5.     Whether Count III properly states a claim for unjust enrichment against Labette Health.

6.     Whether Count IV properly states a claim for invasion of privacy through public disclosure of private information against Labette Health.

7.     Whether Count V properly states a claim for breach of fiduciary duty.

8.     Whether Count VI properly states a claim for the tort of outrage under Kansas law.

OP 3344679.6

### III.   ARGUMENT

#### A.   Legal Standards

##### 1.   Rule 12(b)(1)

"When evaluating a plaintiff's standing at the stage of a motion to dismiss on the pleadings [the court] must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *S. Utah Wilderness All. V. Palma*, 707 F.3d 1143, 1152 (10th Cir. 2013). But the court does not give deference to conclusory allegations. *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).

"To establish Article III standing, an injury must be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quotation marks omitted); *see also Lupia v. Medicredit, Inc.*, 8 F.4th 1184, 1190 (10th Cir. 2021) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). With respect to threatened future injury (as opposed to actual, existing injury), the purpose of the imminence requirement "is to ensure that the alleged injury is not too speculative for Article III purposes;" Plaintiffs may not satisfy the "injury-in-fact" requirement with allegations of harm that are conjectural or hypothetical. *Clapper*, 568 U.S. at 409. A "threatened injury must be *certainly impending* to constitute injury in fact." *Id.* (emphasis in original). "[A]llegations of *possible* future injury are not sufficient." *Id.* (emphasis in original). If a "claimed injury . . . is contingent upon speculation or conjecture," then it fails the test of a "certainly impending" injury capable of conferring standing on the plaintiffs. *Tandy v. City of Wichita*, 380 F.3d 1277, 1283 (10th Cir. 2004).

Alleging an injury in fact is also not enough; that injury must be "fairly traceable" to the challenged conduct. "[T]o show that an injury is 'fairly traceable' to the challenged conduct, a plaintiff must allege a substantial likelihood that the defendant's conduct caused plaintiff's injury

OP 3344679.6

in fact . . . . As part of this showing, a plaintiff must establish that its injury was "not the result of the independent action of some third party not before the court." *Santa Fe All. For Pub. Health & Safety v. City of Santa Fe, New Mexico*, 993 F.3d 802, 814 (10th Cir. 2021) (citations and quotation marks omitted). A "speculative chain of possibilities does not establish that [an] injury . . . is fairly traceable." *Clapper*, 568 U.S. at 414. In this regard, "pleadings must be something more than an ingenious academic exercise in the conceivable." *U.S. v. Students Challenging Regul. Agency Procs. (SCRAP)*, 412 U.S. 669, 688, 93 S. Ct. 2405, 2416, 37 L. Ed. 2d 254 (1973).

### 2.      Rule 12(b)(6)

When evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court assumes as true all well-pleaded factual allegations and views them in the light most favorable to the nonmoving party to determine whether they plausibly give rise to an entitlement of relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011). The pleading standard arising from the decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal* requires that a complaint plead facts sufficient to show that the claims have substantive plausibility. The court may also consider exhibits and documents incorporated into the Complaint by reference. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009); *Schwab v. Kansas*, 2017 WL 2831508, at *6 (D. Kan. June 30, 2017). While the Court must accept as true all factual allegations in the Complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Schwab*, 2017 WL 2831508 at *6 (quoting *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010)).

To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim that is plausible—not merely conceivable—on its face. *Iqbal*, 556 U.S. at 679–80; *Twombly*, 550 U.S. at 555. When determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense. *Iqbal*, 556 U.S. at 679. The

OP 3344679.6

Court need not accept as true those allegations that state only legal conclusions. *See id.; Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Plaintiffs bear the burden of framing their Complaint with enough factual matter to suggest they are entitled to relief; it is not enough to make threadbare recitals of a cause of action accompanied by conclusory statements. *Twombly*, 550 U.S. at 556. No Count of the Complaint meets this standard.

      **B.**    **Plaintiffs' Claims Should Be Dismissed for Lack of Standing**

          **1.**    **Plaintiffs Do Not Have Standing Because They Have Not Alleged a Plausible Injury-in-Fact**

"No concrete harm, no standing." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2200 (2021). In *TransUnion*, the Supreme Court clarified that a risk of future injury might confer standing to pursue injunctive relief where it is sufficiently substantial and imminent. However, a risk of future injury is categorically insufficient to confer standing to pursue damages unless a substantial and imminent risk of harm exposes the plaintiff to a separate, concrete (i.e., present, not future) harm. A risk of future injury is not, by itself, a concrete harm sufficient to confer standing to pursue monetary damages. *TransUnion*, 141 S. Ct. at 2210.

In *C.C. v. Med-Data Inc.*, this Court analyzed the standing requirements for a putative class action arising from a data breach, and held that the plaintiffs lacked standing where they failed to allege any specific misuse of their personal information to their economic loss. *C.C. v. Med-Data Inc.*, No. 21-2301-DDC-GEB, 2022 WL 970862 (D. Kan. Mar. 31, 2022). The plaintiffs in *Med-Data* alleged that cybercriminals stole their personally-identifiable information ("PII") in a data breach incident and that, as a result, they suffered six categories of damages:

    1.    "imminent, immediate and continuing risk of identity theft, identity fraud and/or medical fraud[;]"

    2.    "[O]ut-of-pocket expenses to purchase credit monitoring, internet monitoring, identity theft insurance, and/or other Breach risk mitigation products[;]"

3.   "[O]ut-of-pocket expenses incurred to mitigate the increased risk of identity theft, identity fraud and/or medical fraud pressed upon them by the Breach, including the costs of placing a credit freeze and subsequently removing a credit freeze[;]"

4.   The "value of their time spent mitigating the increased risk of identity theft, identity fraud and/or medical fraud pressed upon them by the Breach[;]"

5.   The "lost benefit of their bargain when they paid for their privacy to be protected and it was not[;]" and

6.   Loss of privacy.

*Id.* at *6. The Court held that none of those alleged injuries were sufficient to confer standing because plaintiffs failed to allege any actual misuse or fraud.[1]

Here, nearly all of the injuries complained of by Plaintiffs, including increased "risk of identity theft and fraud," the "anticip[ation]" of "try[ing] to mitigate and address harms caused by the Data Breach," and "substantial risk of being targeted for future phishing, data intrusion, and other illegal schemes." Doc. 1-1 at ¶¶ 128, 130, 132. Following *Transunion, Med-Data*, and similar case-law, the sort of "increased risk" speculative injuries that Plaintiffs allege are insufficient to confer standing upon Plaintiffs.

Attempting to overcome this clear insufficiency, Plaintiffs allege three additional categories of speculative damages: lost time and money spent monitoring her credit, benefit of the bargain damages, and an increase in suspicious and 'spam' telephone calls and emails. Doc. 1-1 at ¶ 129. None of these are sufficient to confer standing.

a.   *Allegations of potential out-of-pocket costs and time spent performing credit monitoring are not sufficient to confer standing.*

Plaintiffs complain that, as a result of the alleged breach, they may have to spend time monitoring their credit that they would have "spent on other activities," and state they may be

---

[1] By contrast, this Court has found that a data breach plaintiff who alleges actual misuse or fraud involving their PII following the data breach may have standing at the pleading stage. *Cf. Hapka v. Carecentrix, Inc.*, No. 16-2372-CM, 2016 WL 7336407, at *4 (D. Kan. Dec. 19, 2016).

required to spend out-of-pocket for services to monitor their credit. *See* Doc. 1-1 at ¶¶ 127, 130. Neither of these injuries are sufficient to confer standing upon Plaintiffs.

These claimed injuries are just as speculative as the "increased risk" allegations. Plaintiffs allege that they merely "***anticipate*** spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach." Doc. 1-1 at ¶ 130 (emphasis added). Again, injuries that have not yet happened and are not substantially imminent are not injuries that confer standing. *TransUnion*, 141 S. Ct. at 2210-11.

In *Med-Data*, the court explained that speculative credit monitoring is insufficient to confer standing:

> plaintiff alleges she sustained damages in the form of time spent and expense incurred mitigating the increased risk of identity theft and fraud. But plaintiff cannot 'manufacture standing merely by inflicting harm on [herself] based on [her] fears of hypothetical future harm that is not certainly impending.' As another district court in our Circuit explained, 'while it may have been reasonable to take some steps to mitigate the risks associated with the data breach, those actions cannot create a concrete injury where there is no imminent threat of harm.'

*Med-Data Inc.,* 2022 WL 970862, at *8 (quoting *Legg v. Leaders Life Ins. Co.*, 574 F. Supp. 3d 985, 994 (W.D. Okla. 2021)) (internal citations omitted).

Plaintiffs' speculation that their information may be stolen and used to harm them, absent any concrete evidence of identity theft, is not enough to justify the self-inflicted alleged harm of credit monitoring. Moreover, even if Plaintiffs feel the need to spend time and money monitoring their credit as a result of the alleged breach, then Labette Health's provision of pre-suit identity theft protection services moots their argument. *See infra* Section B.2.

      b.    *Plaintiff did not suffer "benefit of the bargain" damages, and such damages would be insufficient to confer standing*.

Benefit of the bargain damages do not create standing in data breach cases. Plaintiffs allege they overpaid for a service that was intended to be accompanied by adequate data security but was

8

not." Doc. 1-1 at ¶ 135. The Court *Med-Data* dismissed an identical allegation, stating "[s]everal cases have rejected this theory. And the court predicts that our Circuit would join those results because plaintiff's allegations are simply too thin to confer standing. So, the court follows and applies those cases here*." Med-Data Inc.*, 2022 WL 970862, at *9; *See also Legg*, 574 F. Supp. 3d at 995 (dismissing a similar benefit of the bargain argument because "Plaintiff has not . . . indicated that he paid any sort of premium in exchange for data security or that the data breach diminished the value of the insurance products he received in return."). As here, the plaintiff in *Med-Data* alleged that "some indeterminate part of her payment . . . went to defendant for data security." *Id.* "[S]uch a claim is too flimsy to support standing. Plaintiff doesn't allege that the market value of her healthcare services (plus data security) was less than what she paid." *Id.* (internal quotation marks and citations omitted). Finally, the court explained that, "even if plaintiff had lost some measure of privacy and that privacy was part of the bargain for medical services, she hasn't alleged any concrete harm from the alleged data breach. If plaintiff bargained for data security, and no third party has misused her data, then plaintiff has received exactly what she paid for." *Id.* (internal quotation marks omitted).

Plaintiffs allege—without factual support—that some indeterminate "[p]art of the price" of their medical treatment was meant to be used for data security. Doc. 1-1 at ¶ 135. Plaintiffs do not allege they paid more than average for medical procedures (as would reflect some agreement for security precaution). *See generally* Doc. 1-1. Plaintiffs do not allege that their data has actually been misused. Flimsy allegations of an unspoken, non-specific agreement to use some unspecified amount of money for data security do not confer standing.

          c.    <u>Spam calls are not sufficient to confer standing because they are too speculative.</u>

OP 3344679.6

Plaintiffs allege that they are now subject to an "increase in suspicious and 'spam' telephone calls and emails since the Data Breach. Plaintiffs believe these suspicious telephone calls and emails to be a result of the Data Breach." Doc. 1-1 at ¶ 129. These allegations are insufficient to convey standing for two reasons: First, the mere receipt of spam mail or calls is, by itself, not a compensable injury under varied caselaw. Second, it is too attenuated from the data breach to constitute an injury-in-fact.

Article III "requires the plaintiff to show a sufficiently direct causal connection between the challenged action and the identified harm." *Agred Found. v. U.S. Army Corps of Engineers*, 3 F.4th 1069, 1073 (8th Cir. 2021) (citing *Dantzler, Inc. v. Empresas Berríos Inventory & Operations, Inc*., 958 F.3d 38, 47 (1st Cir. 2020)). Conclusory allegations alone do not suffice. Rather, Plaintiff must plead "concrete facts" to establish that Labette Health's actions, not the alleged conduct of any other "independent actor[] not before the court[]," caused the alleged harm. *Clapper*, 568 U.S. at 414 n.5 (citations omitted). In the data breach context, this means that Plaintiffs must allege "sufficient factual matter" for the Court to plausibly infer that Labette Health was the source of the personal information that was misappropriated and resulted in the spam calls. *See Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, 892 F.3d 613, 623-24 (4th Cir. 2018) (finding traceability where plaintiffs alleged the defendant was the only common source that collected and stored plaintiffs' PII (social security numbers and maiden names) required to open fraudulent credit card accounts); *see also, In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*, 45 F. Supp. 3d 14, 31 (D.D.C. 2014) (allegations that "unauthorized charges were made to [plaintiffs'] existing credit cards or debit cards, or that money was withdrawn from an existing bank account" could not be traced to the data breach because plaintiffs did not "allege[] that credit-card, debit-card, or bank-account information was on the stolen tapes"); *see*

10

also *Fernandez v. Leidos, Inc.*, 127 F. Supp. 3d 1078, 1086 (E.D. Cal. 2015) (plaintiff did not allege that the medical conditions specifically targeted by increased spam were listed in the medical records disclosed in the breach).

Plaintiffs do not allege that the information needed to make these calls was disclosed in the alleged breach, or that there is some other reason to believe these spam calls were the result of the alleged breach rather than as part of the national rise in spam calls. Plaintiffs' alleged increase in spam calls does not establish standing.

Next, the receipt of spam calls does not confer standing, even if it is correlated with the alleged breach. "The receipt of spam by itself, however, does not constitute a sufficient injury entitling [Plaintiffs] to compensable relief." *Cherny v. Emigrant Bank*, 604 F. Supp. 2d 605, 609 (S.D.N.Y. 2009). "Courts have generally rejected the theory that unsolicited calls or emails constitute an injury in fact." *Cooper v. Bonobos, Inc.*, No. 21-CV-854 (JMF), 2022 WL 170622, at *5 (S.D.N.Y. Jan. 19, 2022). "[W]hile all internet users, including this court, are frustrated by unwanted and unwelcomed emails, and viruses, the end internet user has no legal recourse for such frustration." *Burgess v. Eforce Media, Inc.*, No. 1:07CV231, 2007 WL 3355369, at *6 (W.D.N.C. Nov. 9, 2007). Merely receiving a spam call that can easily be declined is not even the sort of trifle which the law should seek to address. *See Bonobos*, 2022 WL 170622, at *5 ("Without more, the mere allegation that he now receives more spam calls, texts, and emails does not support standing."). Accordingly, this does not constitute injury-in-fact.

### 2.     Labette Health's Pre-Suit Provision of Insurance Coverage Moots Plaintiffs' Alleged Injuries

Even if Plaintiffs could establish standing based on their speculative future injuries, non-specific lost time, and the occasional untraceable spam phone call, this Court should dismiss their

OP 3344679.6

claims because they failed to allege their injuries are not fully redressed by Labette Health's pre-suit provision of no-cost identity theft protection services including no-deductible insurance.

When a defendant provides redress for plaintiff's alleged injuries before she files suit, federal courts regularly hold the plaintiff lacks standing. *See*, e.g., *Luman v. Theismann*, 647 F. App'x 804, 806–07 (9th Cir. 2016) (concluding putative class representative did not have standing where he received full refund to his credit card account before filing lawsuit because he demonstrated no injury-in-fact); *Hill v. LLR, Inc.*, No. CV-18-120-GF-BMM-KLD, 2020 WL 9770748, at *2 (D. Mont. Nov. 16, 2020) (finding that a pre-suit refund exceeded the principal and interest potentially due, the plaintiff lacked a concrete injury, depriving her of standing); *Dress v. Cap. One Bank (USA), N.A.*, No. 1:19-CV-00343, 2019 WL 3451304, at *3–4 (E.D. Va. July 30, 2019) (plaintiff lacked standing where before filing suit she was offered and accepted a full refund of allegedly inflated finance charges on credit card), aff'd, 849 F. App'x 55 (4th Cir. 2021); *Epstein v. JPMorgan Chase & Co.*, No. 13 CIV. 4744 KPF, 2014 WL 1133567, at *7 (S.D.N.Y. Mar. 21, 2014) (putative class action with claims for breach of contract, breach of the implied covenant of good faith and fair dealing, conversion, unjust enrichment, negligent misrepresentation, fraud, and violations of state statutes, based on alleged improper interest charges, dismissed for lack of standing where plaintiff received full refund of all allegedly improper interest charges before filing suit); *Amirhamzeh v. Chase Bank USA, N.A.*, No. CV-13-00527-BRO FFMX, 2014 WL 641705, at *7 (C.D. Cal. Feb. 7, 2014) (pre-litigation refund exceeding alleged wrongful charges and interest "mooted" plaintiff's claims).

Indeed, some courts have found a plaintiff lacked standing when a full refund was offered or made available before suit, even if the refund was rejected or not accepted. *See Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 361 n.10 (3d Cir. 2013) (affirming dismissal for lack of standing

where the defendant offered a full refund of the purchase price, but the plaintiff refused to accept the refund); *see also Harris v. PFI W. Stores, Inc.*, No. SACV192521JVSADSX, 2020 WL 3965022, at *3 (C.D. Cal. Apr. 9, 2020) (finding plaintiff that rejected refund offer lacked standing because the defendant offered its refund before the commencement of the suit); *Hardy v. Bed Bath & Beyond, Inc*., No. 17-22315-CIV, 2018 WL 1272687, at *2 (S.D. Fla. Mar. 9, 2018) (same); *Hamilton v. Gen. Mills, Inc.*, No. 6:16-CV-382-MC, 2016 WL 4060310, at *5 (D. Or. July 27, 2016) ("[B]ecause Hamilton's loss of $15.98 is mooted by General Mills' refund program; he does not have standing to sue because he has not cognizably alleged any other concrete and particularized injury.").

The logic of the pre-litigation refund cases applies here. Plaintiffs attached and incorporated the data breach notifications sent by Labette Health into their Complaint.[2] The notifications state that Labette Health provided to Plaintiffs (and the entire putative class) identity theft protection services from IDX, which includes no-deductible insurance of $1,000,000 each, to cover all costs of any identity theft. *See* Doc. 1-1 at ¶¶ 120, 176 (referencing identity monitoring services by Labette Health, and notice from Labette Health discussing the same); *See also* **Exhibit A**. Any harm Plaintiffs suffered from the alleged data breach is redressed or redressable by the insurance policy Labette Health provided to them pre-suit. Plaintiffs' failure to allege a separate harm renders the Complaint insufficient to establish an injury-in-fact fairly redressable by the Court.

---

[2] "In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court may look both to the complaint itself and to any documents attached as exhibits to the complaint." *Griffin v. Wal-Mart Stores, Inc.*, No. CIVA 05-2413-CM, 2005 WL 4704776, at *1 (D. Kan. Dec. 7, 2005)

OP 3344679.6

**C.** **Each Count of the Complaint Should Be Dismissed for Failure to State a Claim**

Even if Plaintiffs are found to have standing, this Court should still dismiss the Complaint in its entirety for failure to state a claim upon which relief may be granted.

**1.** **Each Count in the Complaint Fails to State a Claim Because Plaintiff Failed to Meet the Threshold Requirement Under the Kansas Tort Claims Act**

Under K.S.A. § 12-105b(d), prior to bringing a "claim against a municipality or against an employee of a municipality which could give rise to an action brought under the" KTCA, a person must first file a written notice with the clerk or governing body of the municipality, and then must wait 120 days or until the claim is denied. "The filing of a proper notice under K.S.A. 12–105b(d) is a condition precedent to the filing of an action against a municipality." *Dunegan v. City of Council Grove, Kansas Water Dep't*, 77 F. Supp. 2d 1192, 1205 (D. Kan. 1999). Failure to file notice under the KTCA prior to filing a lawsuit "requires dismissal of [the plaintiff's] state law claims." *Id.* at 1206.

In Count I, Plaintiffs allege that Labette Health's negligence was the cause of the data breach, but negligence is a classic cause of action covered by the KTCA. *See Dodge City Implement, Inc. v. Bd. of Cnty. Comm'rs of Cnty. of Barber*, 288 Kan. 619, 642, 205 P.3d 1265, 1283 (2009) (stating that the failure to file a KTCA notice deprived the district court of "jurisdiction over the negligence and negligence per se claims."). Accordingly, the Court should dismiss Count I for failing to comply with the KTCA's notice provisions.

Counts II and III are interrelated, and both barred by the KTCA. In Count II, Plaintiffs allege the existence of an implied-in-equity contract between Plaintiffs and Labette Health due to Plaintiffs' alleged belief that Labette Health owed them a duty to protect their data. Doc. 1-1 at ¶ 169. Similarly, in Count II, Plaintiffs allege that Labette Health's failure to adequately protect their

privacy constitutes unjust enrichment. *Id.* at ¶ 190. These both constitute "negligent or wrongful act or omission[s]" by an employee of a governmental entity, or a governmental entity itself, and are thereby covered by the KTCA. K.S.A. § 75-6103; *see also Wheat v. Finney*, 230 Kan. 217, 220, 630 P.2d 1160, 1163 (1981) (explaining that the bar for suit includes "not only for actions in tort but also for actions on implied contract.").

The last three Counts in the Complaint—invasion of privacy, breach of fiduciary duty, and outrage—are classic restatement torts, and would also be subject to the KTCA's notice provisions. Invasion of privacy is a classic tort covered by state tort claims acts, including the KTCA. *See Garcia v. Anderson*, 46 Kan. App. 2d 1094, 1100, 268 P.3d 1248, 1252 (2012) ("We agree with the district court that Garcia's claims could give rise to a number of actions whereby the appellees could be liable in Kansas, namely assault, battery, false imprisonment, invasion of privacy, and damages for racial profiling. All of these types of claims are covered by [the KTCA]'s notice requirement."). Breach of fiduciary duty is also a classic tort covered by the KTCA, particularly as it is plead in this case—as breach of particular duties under federal law. *Jeanes v. Bank of Am.*, *N.A.*, 40 Kan. App. 2d 281, 282, 191 P.3d 325, 328 (2008), order set aside (Feb. 17, 2009), aff'd, 296 Kan. 870, 295 P.3d 1045 (2013) (finding that appellant's "breach of fiduciary duty . . . claims against [appellee] sounded in tort."); *See also Ayalla v. Unified Gov't of Wyandotte Cnty.*, 349 P.3d 491 (Kan. Ct. App. 2015) (analyzing a fiduciary duty claim under the KTCA). Finally, outrage, like its cousin intentional infliction of emotional distress, is required to comply with the KTCA. *Reindl v. City of Leavenworth*, 361 F. Supp. 2d 1294 (D. Kan. 2005) (holding the plaintiff was required to plead compliance with notice requirements of KTCA for the tort of outrage.)

Given that each Count of the Complaint constitutes a "negligent or wrongful act" within the meaning of the KTCA, Plaintiffs were, accordingly, required to file a written notice regarding

each Count of the Complaint. Plaintiffs include no facts in the Complaint to suggest that they satisfied the KTCA's notice requirements because, as is evident, they did not provide the required notice. Accordingly, the Complaint should be dismissed in its entirety.

> **2.      Count II Should Be Dismissed Because Plaintiffs Do Not Allege Facts to Demonstrate an Implied Contract Between the Parties**

"Parties may be bound as firmly by implied contracts as by those expressed in words, oral or written." *Lindsey Masonry Co. v. Murray & Sons Constr. Co*., 53 Kan. App. 2d 505, 520, 390 P.3d 56, 67 (2017). "To form a binding contract, there must be a meeting of the minds on all essential elements. Contract formation requires an unconditional and positive acceptance." *Id.* at 511, 61. "[A]ssent to an implied-in-fact contract is inferred from conduct." *Id.* at 526, 70. To survive a motion to dismiss, a plaintiff must submit more than "his own unilateral expectations." *Weatherby v. Burlington N. & Santa Fe Ry. Co.*, 209 F. Supp. 2d 1155, 1164 (D. Kan. 2002).

Here, there was no implied contract for provision of data security services, and the only potential contract between the parties was for the provision of medical care. Plaintiffs allege, without reference to specific conduct or representations on the part of Labette Health, that "Defendant manifested its intent to enter into an implied contract that included a contractual obligation to reasonably protect Plaintiffs' and Class Members' Private Information." Doc. 1 at ¶ 169. But Plaintiffs do not point to a single action or representation on the part of Labette Health showing assent to the terms of this contract, other than Plaintiffs' "unilateral expectations." *See Weatherby*, 209 F. Supp. 2d at 1164.

In *Brush v. Miami Beach Healthcare Grp. Ltd.*, the court confronted a similar situation where a patient alleged that a hospital's data breach violated an implied contract to protect data. The court dismissed the implied contract claim noting:

> In this case, the Plaintiff checked into the Defendants' healthcare facility to obtain medical treatment. Nothing in the Plaintiff's Complaint gives rise to a factual

16

> inference that the Defendants tacitly agreed to secure her personal data in exchange
> for remuneration. It is clear from the Plaintiff's allegations that she transacted to
> receive healthcare services from the Defendants—not data security services beyond
> the privacy requirements already imposed on the Defendants by federal law.

*Brush v. Miami Beach Healthcare Grp. Ltd.*, 238 F. Supp. 3d 1359, 1369 (S.D. Fla. 2017).

*Brush* is almost identical to the instant case. Plaintiffs sought healthcare services from Labette Health. Before they received that care, they did not inquire into the data privacy procedures at Labette Health, or expressly or implicitly indicate that they required certain protections. Moreover, Plaintiffs have not pointed to a single representation or action on the part of Labette Health indicating it was offering data security services as a separate implicit contract. Without some reliable indication that Labette Health assented to a contract to protect Plaintiffs data, the Court should dismiss Count I of the Complaint.

The closest that Plaintiffs get to specifically alleging a duty to preserve information is their suggestion that the data breach violated obligations Labette Health owes under HIPAA and the FTCA. *See* Doc. 1-1 at ¶¶ 172, 183. But, again, *Brush* is instructive on this question:

> These provisions, despite Plaintiff's protestations otherwise, are not contractual in
> nature. Instead, these provisions inform patients of their rights under federal law—
> specifically the Health Insurance Portability and Accountability Act of 1996
> ("HIPAA")—and the duties imposed upon the Defendants by these statutory
> provisions. Because the Defendants are required by law to adhere to HIPAA
> without receiving any consideration from the Plaintiff or any other patient, <u>these
> provisions cannot create contractual obligations</u>.

*Brush*, 238 F. Supp. 3d at 1367 (emphasis added).

> It is an elementary principle of law that to be enforceable a contract must be based
> upon valuable consideration. It is also the rule in this jurisdiction that an agreement
> to do or the doing of that which a person is already bound to do does not constitute
> a sufficient consideration for a new promise.

*Apperson v. Sec. State Bank*, 215 Kan. 724, 734, 528 P.2d 1211, 1219 (1974). The fact that Labette Health may be obligated to follow federal law does not bear on whether it *<u>assented to an implied contract</u>* with Plaintiffs. Accordingly, there is not an implied contract between the parties.

17

Plaintiffs also make passing reference to the Privacy Notice as an "express representation" that Labette Health had entered into an undisclosed contract to protect Plaintiffs' data, but this is nonsensical. Doc. 1-1 at ¶ 177. First, if the Privacy Notice is an "express representation" to protect Plaintiffs' data, then the Court should promptly dismiss all of Plaintiff's negligence and quasi-contractual counts, and look only to the express terms of the Privacy Notice under clear Kansas law. *See Midwest Asphalt Coating, Inc. v. Chelsea Plaza Homes, Inc.*, 45 Kan. App. 2d 119, 123, 243 P.3d 1106, 1110 (2010) ("Recovery for payment under the terms of a contract and recovery for quantum meruit are mutually exclusive legal concepts."). Second, and likely because Plaintiffs are fully aware that the Privacy Notice does not actually constitute a binding contract between the parties, the Court should look at the language in the Privacy Notice and conclude that it clearly does not evidence even an implicit contract between the parties. Repeatedly throughout the Privacy Notice, Labette Health discusses its obligations under federal law, and in industry standards. *See* Doc. 1-1 at ¶ 176 (referencing the privacy notice); A true and accurate copy of the privacy notice is attached to this document as **Exhibit B**. Labette Health never refers to any agreement, by its terms or in reference to any contractual obligation or amount paid, to protect the data allegedly lost in the alleged breach. *Id.*

As previously discussed, this Court's ruling in *Med-Data* is instructive—where a Plaintiff simply alleges that an implied contract existed between the parties without specific representations in support, "[s]uch a claim is too flimsy to support standing. Plaintiff doesn't allege that the market value of her healthcare services (plus data security) was less than what she paid." *Med-Data Inc.*, 2022 WL 970862, at *9. Here, Plaintiffs' self-serving post hoc assertion that there was some secret understanding between the parties that they were in a contract for data protection services does not pass muster. Accordingly, the Court should dismiss Count II of the Complaint.

18

### 3.     Count III Should Be Dismissed Because Plaintiffs Have Not Alleged Facts to Demonstrate that Labette Health Was Unjustly Enriched

"Unjust enrichment has three elements: "(1) a benefit conferred upon one person by another; (2) an appreciation or knowledge of the benefit received; and (3) the acceptance or retention of the benefit by the individual receiving the benefit under such circumstances as to make it inequitable for the individual to retain the benefit without payment of its value." *Hurtig v. Mattox*, 2017 WL 6542803, at *4 (Kan. Ct. App., Dec. 22, 2017). "The substance of an action for unjust enrichment lies in a promise implied in law that one will restore to the person entitled thereto that which in equity and good conscience belongs to him [or her]."*Haz-Mat Response, Inc. v. Certified Waste Servs. Ltd.*, 259 Kan. 166, 176, 910 P.2d 839, 846 (1996). Critically, Plaintiffs must demonstrate that they "change[d] [their] position to [their] detriment as a result of any promise" made by Labette Health. *J.W. Thompson Co. v. Welles Prod. Corp.*, 243 Kan. 503, 512, 758 P.2d 738, 745 (1988).

Much of Labette Health's previous discussion regarding the lack of implied contract between the parties is applicable here. *See generally Melnick v. TAMKO Bldg. Prod., Inc.*, 469 F. Supp. 3d 1082, 1107 (D. Kan. 2020) (observing that "unjust enrichment is based on an implied contract."). Plaintiffs do not allege any specific conduct that could be the basis for some belief that the money they paid was for anything other than medical services. In *Brush*, the Plaintiff alleged that the hospital-defendant's data breach constituted unjust enrichment. However, the court held that the plaintiff's factual allegations failed to establish:

> (1) she conferred payment—above and beyond the money owed for her medical treatment; (2) the Defendant knew Plaintiff paid additional remuneration for data security; and (3) Defendants accepted more money than was owed for their healthcare services.

*Brush*, 238 F. Supp. 3d at 1369.

Similarly here, Plaintiffs allege they paid to "receive[]health-care and other medical services." Doc. 1-1 at ¶ 185. Plaintiffs do not allege that they ever discussed data privacy with Labette Health or that they relied on Labette Health's non-existent representations about data privacy. Plaintiffs provide bare recitations of the legal elements of their claims, with phrases like "Defendant acquired the Private Information through inequitable means," and "Plaintiffs and Class Members have no adequate remedy at law," without any factual predicates.[3] Doc. 1-1 at ¶¶ 195–97. But Plaintiffs do not even attempt to allege how much of their payments were paid as consideration for privacy practices rather than mere medical services, or that there was some meeting of minds between the parties. It is clear that Plaintiffs *merely paid for healthcare services*, not for some amorphous promise to secure data. Where the alleged payment is "simply consideration" for the central purpose of the agreement between the parties—in this case, medical care—there is no unjust enrichment. *Meckenstock v. N. Am. Co. for Life & Health Ins.*, No. 09-1251-JTM, 2009 WL 10689706, at *1 (D. Kan. Dec. 21, 2009). Accordingly, the Court should dismiss this Count.

### 4.     Count IV Fails to State a Claim Because Plaintiffs Have Not Sufficiently Alleged Invasion of Privacy

In Count IV, Plaintiffs allege that the potential release of their data on the dark web, and the fact that it could potentially be sold or used by hackers, constitutes the classic tort of invasion of privacy. Plaintiffs' claims should be dismissed for two reasons: First, Plaintiffs fail to plausibly allege the required elements of invasion of privacy under Kansas law, including that Labette Health acted intentionally or publicized their information. Second, publication by itself, without reputational harm, is not a sufficient injury to pass muster.

---

[3] While the Court is obligated to accept the Complaint's factual allegations as true at this stage of litigation, it is not required to accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010).

OP 3344679.6

Under Kansas law, "the tort of public disclosure of private information" requires "[o]ne who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offense to a reasonable person, and (b) is not of legitimate concern to the public." *Med-Data Inc.*, 2022 WL 970862, at *10.

Initially, Plaintiffs have nowhere in the Complaint alleged that Labette Health acted intentionally to disseminate their information. Disclosure of private facts is an intentional tort. *See Smith v. Welch*, 265 Kan. 868, 882 (1998); *See also Ramos v. Bd. of Cnty. Commissioners of Cnty. of Saline*, No. 99-4155-DES, 2000 WL 1478542, at *3 (D. Kan. Sept. 27, 2000). There is nothing in the Complaint remotely suggesting that Labette Health acted intentionally. Instead, the Complaint alleges that Labette Health "breach[ed] its duty of confidentiality," and "was otherwise negligent and reckless because it failed to properly maintain and safeguard its computer systems and data." Doc. 1-1 at ¶ 205, 90. Defendant alleges also that "Plaintiffs' and Class Members' identities are now at risk because of Defendant's negligent conduct since the Private Information that Defendant collected and maintained is now in the hands of data thieves." Doc. 1-1 at ¶ 12. That is not intentional conduct. This sort of tort claim does even not fit the factual scenario of the Complaint. The criminals who allegedly accessed Plaintiffs' data broke into Labette Health's system to view the information. Those criminals were not Labette Health's agents, and their actions cannot be imputed onto Labette Health.

Plaintiffs also fail to plead that Labette Health "publicized" their information. In passing, the *Med-Data* court who viewed a situation almost identical to this action, also expressed its skepticism that, even if plaintiff alleged that the information was "uploaded to a public facing website," that such would constitute "publication," as is required by the elements of the tort. *Id.*

As the Tenth Circuit Court of Appeals explained in *C.R. England*, under the restatement approach to privacy torts (which Kansas also uses) "public disclosure has been interpreted to mean the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. On the other hand, communicating a private fact to a small group of persons . . . does not constitute public disclosure." *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1054 (10th Cir. 2011) (internal quotation marks and citations omitted). In a situation like the one alleged by Plaintiffs, where, at most, the information has been stolen by a small group of hackers who have yet to or may eventually parcel off small pieces of the data to sell to criminals, there is no "public disclosure" as that term is mean by the Restatement. *See e.g. Galaria v. Nationwide Mut. Ins. Co.*, 998 F. Supp. 2d 646, 663 (S.D. Ohio 2014), rev'd on other grounds, 663 F. App'x 384 (6th Cir. 2016) ("As such, the Complaint fails to allege their PII has been disclosed by Defendant, let alone that Defendant 'publicized' their PII to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge."); *See also McKenzie v. Allconnect, Inc.*, 369 F. Supp. 3d 810, 820 (E.D. Ky. 2019) ("Plaintiffs' argument on this point constitutes an expansion of the legal meaning of publicity masquerading as a distinction.").

Here, Plaintiffs never allege that the information was "publicized," or explain the manner in which hacking constitutes a publication.

Finally, even if Plaintiffs properly alleged that their information had been publicized as required for their invasion of privacy tort claim, they fail to allege they have been injured in any way that would give rise to a claim. Again, *Med-Data* is instructive. The court noted "[e]ven if this upload qualifies as the requisite 'publicity' for a public disclosure of private facts claim, plaintiff hasn't alleged a concrete harm resulted from this publicity. She hasn't alleged any harm

to her reputation from the alleged breach," as is required under Kansas law. *Med-Data*, 2022 WL 970862, at *10.

Just as is the case with Labette Health's above standing arguments, Plaintiffs clearly have not suffered any distinct concrete injury, which is required for this claim. Bare recitations of the elements for their claims, including the stray use of the terms "embarrassment, emotional distress, humiliation, and loss of enjoyment of life," without more, are not sufficient to meet Plaintiffs' burden to prove that the alleged breach actually constituted a "highly offensive" reputational injury to Plaintiffs. *See* Doc. 1-1 at ¶ 205. Plaintiffs have not alleged, beyond the facially implausible recitation of mere legal conclusions, that they suffered the sort of injury required to maintain an action for the public disclosure of private facts. Accordingly, Count IV should be dismissed.

### 5.    Count V Should Be Dismissed Because They Have Not Alleged Sufficient Facts to Establish that Labette Health Owed Them a Fiduciary Duty

"The requirements of a claim of breach of fiduciary duty are existence of a duty, breach of that duty, and damages resulting from the breach" *Schneider v. Kansas Securities Commissioner*, 397 P.3d 1227, 1247 (Kan. Ct. App. 2017). "A fiduciary relationship exists where there has been a special confidence reposed" in the defendant." *Dana v. Heartland Management Co., Inc.*, 48 Kan.App.2d 1048, 1067, 301 P.3d 772, 785 (2013). Plaintiffs alleged that Labette Health "owed, and owes, a fiduciary duty to Plaintiffs and the proposed class pursuant to Kansas common law, to keep Plaintiffs' medical and other PHI and PII information confidential." Doc. 1-1 at ¶ 209. This is incorrect. "[T]he mere receipt of confidential information is insufficient by itself to transform an arm's-length transaction into a fiduciary relationship." *Weinberg v. Advanced Data Processing, Inc.*, 147 F.Supp.3d 1359, 1367 (S.D. Fla., Nov. 17, 2015). *Simplicity International v. Genlabs Corporation*, 2010 WL 11508819, at *4 (C.D. Cal., Apr. 16, 2010) ("Several cases have rejected this exact argument, finding that in a world where the exchange of information and

23

technology is indispensable to national and international commerce, such an exchange will rarely suffice to create a fiduciary relationship.").

At some unspecified point in the past, Labette Health provided Plaintiffs with certain unspecified medical treatment. Plaintiffs received that treatment to their own satisfaction, and the parties parted ways until the instant data breach. The fact that, over the course of that transaction for medical services, Labette Health received confidential information, does not transform their relationship into the sort of "special confidence" necessary to maintain a claim.

Additionally, Plaintiffs allege that the Court should impose a fiduciary relationship upon Labette Health because of its obligations "set forth in the Health Insurance Portability and Accountability Act Privacy Rule," also known as "HIPAA." It is true that HIPAA imposes certain regulations and obligations upon parties like Labette Health to safeguard patient information, but the Court should not allow Plaintiffs to convert HIPAA into a private cause of action using state breach of fiduciary duty claims. "Any HIPAA claim fails as HIPAA does not create a private right of action for alleged disclosures of confidential medical information." *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 (10th Cir. 2010). "Where, as here, a statute does not expressly authorize a private right of action, such a right may be implied under some circumstances." *University of Colorado Hosp. v. Denver Pub. Co.*, 340 F.Supp.2d 1142, 1143 (D. Colo. 2004).

By couching their breach of fiduciary duty claims in HIPAA, Plaintiffs seek to greatly expand federal law using Kansas law, and confer a private right of action against any hospital which violates HIPAA. This would fundamentally alter the aims of HIPAA by giving Plaintiffs a private right of action under HIPAA, even though Congress clearly did not intend such a remedy exist.  Accordingly, the Court should dismiss Count V.

      **6.    Plaintiffs Have Not Met the Threshold Requirements for a Claim of Outrage, and Count VI Should Be Dismissed**

Plaintiffs allege that the hacking of Labette's systems constitutes "outrageous conduct," sufficient to constitute the classic tort of "outrage" under Kansas law. *See* Doc. 1-1 at ¶ 219. But the facts of this case do not fit outrage, because Labette Health did not act intentionally, and because Plaintiffs have not met the threshold requirements to demonstrate outrageous conduct.

First, outrage is an intentional tort. *Hallam v. Mercy Health Ctr. of Manhattan, Inc.*, 278 Kan. 339, 340, 97 P.3d 492, 494 (2004) ("We preliminarily observe that the tort of outrage is the same as the tort of intentional infliction of emotional distress under Kansas law."). Additionally, "[i]ntent to cause severe emotional distress exists when one acts with the desire to cause or knowledge that his conduct will cause distress in another person." *Benson v. Bryan*, No. 13-2483-EFM-KMH, 2014 WL 6609375, at *4 (D. Kan. Nov. 20, 2014). As previously discussed, Plaintiffs Complaint alleges that Labette Health negligently or recklessly failed to install sufficient security protocols, and does not rise to the level of an intentional tort. *See supra* Section III.C.4. Accordingly, Plaintiffs cannot maintain their outrage claim.

Next, while Kansas courts do recognize the ancient tort of outrage, the bar for this claim is very high: "The tort of outrage has two threshold requirements that the district court must determine: (1) whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery; and (2) whether the emotional distress suffered by the plaintiff was of such extreme degree the law must intervene because the distress inflicted was so severe that no reasonable person should be expected to endure it." *Miller v. Sloan, Listrom, Eisenbarth, Sloan & Glassman*, 267 Kan. 245, 257, 978 P.2d 922, 930 (1999). "Kansas cases have generally held in favor of defendants in outrage cases, finding that the alleged conduct was insufficiently outrageous to support the claim." *Dana v. Heartland Mgmt. Co.*, 48 Kan. App. 2d 1048, 1058, 301 P.3d 772, 780 (2013). The *Dana* court collects cases, noting that no outrage was found in a case

25

where a bank erroneously set off funds, where a wife suffered a miscarriage due to police falsehoods, where a plaintiff observed her deceased mother's forehead being cut open in front of her, and where a mother "was told that her son's brain was in a jar." *Id.*

Plaintiffs' allegations in this case do not even approach this standard. First, the alleged access of the data by hackers, which has not yet been linked to even a single attempted theft of Plaintiffs' identities, is not extreme and outrageous enough to merit recovery. The cases highlighted by *Dana*, as well as Kansas law, involve instances where the intentional conduct of the defendant goes so far beyond the norms of an ordered society. *See Id.* To constitute outrage, the conduct must "go[] beyond the bounds of decency and is utterly intolerable in a civilized society." *Valadez v. Emmis Commc'ns*, 290 Kan. 472, 477, 229 P.3d 389, 394 (2010).

In *Valadez*, the defendant TV-station repeatedly implied that the plaintiff was a suspected serial murderer, gave his name and personal information on broadcast, and played around the clock footage of his arrest, along with implying that he was guilty. *Valadez*, 290 Kan. at 474, 229 P.3d at 393. However, the Supreme Court of Kansas reversed the trial court's determination that this constituted outrage because it was not outrageous because enough to "go[] beyond the bounds of decency and is utterly intolerable in a civilized society." *Valadez*, 290 Kan. at 477, 229 P.3d at 394.

Here, Plaintiffs merely allege that their personal information was sold to unnamed persons on the internet, who have neither yet used the information to steal their identities, nor to harass them using the information. *See* Doc. 1-1 at ¶ 122. Here, at best what is alleged is an inadvertent release of data brought on by a criminal third party, as a result of outdated security protocols. This is not outrage.

OP 3344679.6

Second, Plaintiffs do not meet the second prong of the tort of outrage, because they do not allege sufficiently severe emotional distress. Again, *Valadez* is instructive:

> Valadez testified that, upon seeing the newscast about him, he felt as if he had 'been hit in the gut as hard as anybody could hit me and put me on the floor, it wouldn't have been more painful.' He testified that he felt physically ill as a result of the publicity and that he was afraid to go back to his home for more than a month. His daughter testified that Valadez was crying when he watched the newscast, that he became more private and more afraid of being alone, and that he broke down in tears when his physician asked him how he was doing.
> …
> ***Elevated fright, continuing concern, embarrassment, worry, and nervousness do not by themselves constitute sufficient harm*** to a plaintiff to warrant the award of damages for outrage.

*Valadez*, 290 Kan. at 478, 229 P.3d at 395 (emphasis added).

Here, Plaintiffs do not allege anything approaching the facts in *Valadez*, and even there, the Kansas Supreme Court was unwilling to allow the claims. Plaintiffs do not allege they were ever admitted to the hospital for injuries resulting from their emotional distress. Plaintiffs do not allege they suffered nausea, headaches, or any other cognizable medical injury resulting from the alleged breach. Plaintiffs do not allege even they became socially withdrawn or suffered similar injuries, all of which still missed the mark in *Valadez*.

Instead, Plaintiffs allege at an impermissibly facial level that "Defendant's conduct was extreme and outrageous and caused Plaintiffs extreme and severe mental distress," and that "Plaintiffs suffered harms, including, without limitation, loss of her privacy, emotional distress, lost medical expenses, embarrassment, humiliation, shame and loss of enjoyment of life." Doc. 1-1 at ¶¶ 218-219. Again, the Supreme Court's decisions in *Twombly* and *Iqbal* are instructive: even at the pleading stage, the Court should not accept as true factual allegations that are merely recitations of the relevant legal standard. *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is

OP 3344679.6

inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 663 (2009)). Simply alleging that the pain they suffered included "embarrassment, humiliation, and loss of enjoyment," without anything at all more specific does not meet the pleading standard of Rule 12(b)(6), and it also does not meet the threshold requirement for outrage cases in Kansas. Accordingly, because Plaintiffs have failed to sufficiently allege that either Labette Health's conduct or their own injuries were extreme and outrageous enough, Count VI should be dismissed.

## IV.    <u>CONCLUSION</u>

Labette Health respectfully requests that the Court find that Plaintiffs lack standing, as set forth above, and dismiss Plaintiffs' claims. In the alternative, should the Court find any claims survive Labette Health's standing challenge, the Complaint should still be dismissed in its entirety because no Count of the Complaint states a claim upon which relief may be granted, as a matter of law. Labette Health respectfully requests that the Court grant this Motion to Dismiss and for any further relief as deemed just and proper by the Court.

Dated: October 20, 2022                          SPENCER FANE LLP

By: *s/ Mark A. Cole*_____
     Blane R. Markley #23262
     Mark A. Cole, #25349
     Kyle A. Klucas, #29151
     6201 College Blvd., Suite 500
     Overland Park, KS 66211
     Telephone: 913.327.5108
     bmarkley@spencerfane.com
     mcole@spencerfane.com
     kklucas@spencerfane.com

*Attorneys for Defendant Labette Health*

OP 3344679.6

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on October 20, 2022, a true and correct copy of the foregoing was filed and served via the Court's electronic filing system.

_s/ Mark A. Cole_
Attorney for Defendant Labette Health

OP 3344679.6